## RECONSTRUCTION FINANCE CORPORATION v. FOUST DISTILLING CO.

### No. 3008.

United States District Court, M. D. Pennsylvania.

Dec. 14, 1949.

James G. McDonough, Scranton, Pa., David H. Frantz, Philadelphia, Pa., Arthur J. Sullivan, Philadelphia, Pa., for plaintiff. plaintiff.

Nogi, O'Malley & Harris, Scranton, Pa., for defendant.

MURPHY, District Judge.

The Reconstruction Finance Corporation (herein RFC), an agency of the United States,[1] as transferee of the Defense Supplies Corporation[2] (herein DSC), seeks to recover from defendant distiller, a Penn-

---

1. 15 U.S.C.A. § 601 et seq.; Reconstruction Finance Corporation v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595.

2. The Defense Supplies Corporation was created pursuant to the authority contained in § 5d of the Reconstruction Finance Corporation Act as amended by Act of June 25, 1940, 54 Stat. 572. Its stock is owned by the RFC, which stock in turn is owned by the U. S. government. DSC was formed to "produce, acquire, and carry strategic and critical materials as defined by the President." Id.

and see Reconstruction Finance Corporation v. Spokane P. & S. Ry. Co., 9 Cir., 170 F.2d 96, footnote 1, page 97.

By Joint Resolution of Congress, June 30, 1945, 59 Stat. 310, the DSC was dissolved as of July 1, 1945. All its functions, power, duties, authority, documents, books of account, records, assets, and liabilities of every kind and nature were transferred to the RFC to be performed, exercised and administered by the RFC in the same manner and to the same extent as if originally vested in RF C. See 15 U.S.C.A. § 611 and note; De-

sylvania corporation. Plaintiff's claim for damages is based in the First Count upon the alleged violation by defendant of the provisions of a contract and amended contract between DSC and defendant. In the Second Count plaintiff seeks treble damages, relying upon § 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(e).

The controversy arises from the purchase by the DSC of Ethyl alcohol from defendant and the alleged violation by defendant of maximum prices, and defendant's refusal to comply with refund orders as established by the Price Administrator.

Defendant moves to dismiss the complaint averring (a) failure to set forth a claim upon which relief can be granted; (b) the one year Statute of Limitations under § 205(e); (c) the price as fixed and orders made could have no retroactive effect; (d) the RFC is not the proper party plaintiff since the sale was made to DSC "in the course of trade or business", and therefore only the Price Administrator could sue under § 205(e) for treble damages.

As to the claim for damages under the contract there is obviously no merit to defendant's motion.[3]

As to the retroactive effect of the price orders, see Porter v. Senderowitz, 3 Cir., 158 F.2d 435, certiorari denied 330 U.S. 848, 67 S.Ct. 1091, 91 L.Ed. 603; Collins v. Fleming, Em.App., 159 F.2d 431, certiorari denied 330 U.S. 850, 67 S.Ct. 1094, 91 L.Ed. 1293.

As to plaintiff's claim for treble damages, the Statute of Limitations would commence to run from the date of defendant's failure to comply with each of the respective refund orders. See Woods, Housing Expediter v. Stone, 333 U.S. 472, 68 S. Ct. 624, 92 L.Ed. 815; Creedon v. Babcock, 4 Cir., 163 F.2d 480. This would be a bar to plaintiff's claim pro tanto insofar as such claims were not made by action commenced within one year from defendant's alleged violation of the refund order.

There remains for consideration the question of whether or not the RFC is the proper party plaintiff as to the claim for treble damages. The RFC would have whatever rights to proceed as were inherent in DSC. See footnote 2, supra. Section 205(e) permits an action by one who buys a commodity " * * * for use or consumption other than in the course of trade or business * * *." Defendant contends the sale by it to plaintiff was in the course of trade or business.[4] The real question is as to the one who buys and whether or not DSC bought "for use or consumption other than in the course of trade or business." In this connection see Provisional Government of French Republic v. Cabot, D.C., 59 F.Supp. 855, at page 857.[5] "In view of the character and status of the plaintiff, these allegations seem sufficient to indicate that plaintiff was not buying in the course of trade or business but as a noncommercial consumer * * *".

In Bowles v. Whayne, 6 Cir., 152 F.2d 375, at page 378, referring to Lightbody v. Russell, 293 N.Y. 492, 58 N.E.2d 508, 510, the writer states inter alia, "The highest New York court pointed out that the statute divides purchasers of commodities into two classes: those who purchase for use in the course of their trade or business, that is for a commercial use; and

fense Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 69 S.Ct. 762, 93 L.Ed. ——, and see the same case before the 9th Circuit in 168 F.2d 199.

3. Neither party has raised any question as to the applicability of the statement in Porter v. Warner Holding Co., 328 U.S. 395, at page 401, 66 S.Ct. 1086, at page 1091, 90 L.Ed. 1332, referring to § 205(e) "It establishes the sole means whereby individuals may assert their private right to damages and whereby the Administrator on behalf of the United

States may seek damages in the nature of penalties." The court was there contrasting the possibility of collecting damages in proceeding in equity under § 205 (a).

4. The right of action arises as an incident not of the sale but of the purchase. See Bowles v. Rock, D.C., 55 F.Supp. 865, at page 867; Bowles v. Rogers, D.C., 57 F.Supp. 987, at page 989.

5. Reversed on other grounds, Bowles v. Cabot, 2 Cir., 153 F.2d 258.

those who purchase for use or consumption other than in the course of their trade or business, that is for a non-commercial use— each being an ultimate consumer. The court declared: 'But it will be noted that the statute confers a cause of action upon the purchaser from a violator of the price regulation only in the event that he is in the latter class. In that connection, it may be noted that the Price Administrator, who is charged with the duty of administration of the Emergency Price Control Act, has officially interpreted the phrase "in the course of trade or business" as applying to purchases by industrial and commercial consumers as well as to purchases for a resale and in general to buyers engaged in commercial activity for profit. C.C.H. War Service, Price Control, Par. 42,402.16. His interpretation is entitled to great weight. United States v. American Trucking Ass'n, 310 U. S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345. That the foregoing construction conforms to the intent of the Congress in enacting the legislation is indicated by the Senate and House Committee Reports. Senate Report No. 931; 77th Cong. 2nd Sess., p. 8; 88 Congressional Record, Vol. 88, Part 1, p. 664, Jan. 26, 1942; Conference Report on Emergency Price Control Act of 1942, 77th Cong. 2nd Sess. 1942, House Report No. 1658, pp. 26–27.' " And again in referring to the Provisional Government case, supra, "The sale of vehicles was made to the Government of a foreign country for exportation to its colonies. The character and status of that Government indicated sufficiently that it was not buying in the course of trade or business." See also Bowles v. Madl, 10 Cir., 153 F.2d 21; Johnson v. Frank Sheridan Jonas & Son, D.C., 71 F. Supp. 668, citing cases, affirmed per curiam 2 Cir., 161 F.2d 732. Pertinent also would be that whole body of cases interpreting the provisions of the Wage and Hours Act, 29 U.S.C.A. § 201 et seq., as to what constitutes commerce.

Defendant also points to the amendment of July 25, 1946, to § 205(e), adding thereto subsection 2, 50 U.S.C.A.Appendix, § 925 (e) (2), precluding an action where the violation arose out of the sale to any agency of the government and such sale was made pursuant to the lowest bid made in response to an invitation for competitive bids. Neither party has presented affidavits either in support of or contra the motion. In view of the state of the record, we defer until trial decision as to whether or not under all the circumstances RFC is the proper party plaintiff; whether it is as a matter of law entitled to treble damages,[6] and finally whether under the facts presented treble damages should be allowed.

---

6. Creedon v. Babcock, supra, 163 F.2d 480 at 484.